```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
DERRICK BOSTIC,                      :
                                     :              PRO SE
                   Petitioner,       :
                                     : 07 Civ. 453 (PAC)(THK)
        -against-                    :
                                     :
                                     :              REPORT
JAMES BERBARY,                       :         AND RECOMMENDATION
                                     :
                   Respondent.       :
-------------------------------------X
```

**FROM:   THEODORE H. KATZ, United States Magistrate Judge.**
**TO:     HON. PAUL A. CROTTY, United States District Judge.**

Derrick Bostic ("Petitioner" or "Bostic"), a New York state prisoner, seeks habeas corpus relief, pursuant to 28 U.S.C. § 2254. Bostic is currently incarcerated at Attica Correctional Facility having been convicted on June 9, 2004, of two counts of Criminal Sale of a Controlled Substance In or Near School Grounds (N.Y. Penal L. § 220.44), two counts of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal L. § 220.39), Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal L. § 220.16), and Criminal Possession of a Controlled Substance in the Fifth Degree (N.Y. Penal L. § 220.06). Bostic was sentenced to concurrent indeterminate terms of imprisonment of six to twelve years and an additional concurrent prison term of three and one-half to seven years on the fifth-degree possession charge. On February 28, 2006 the Appellate Division, First Department, affirmed Petitioner's conviction, and leave to appeal to the New York Court of Appeals was denied. See People v. Bostic, 26 A.D.3d

1

291, 291, 810 N.Y.S.2d 71, 71 (1st Dep't), appeal denied, 6 N.Y.3d 892, 892, 817 N.Y.S.2d 627, 627 (2006).

In his Petition, Bostic claims: (1) prosecutorial misconduct during summation, which violated his due process right to a fair trial; and (2) the trial judge aided the prosecution's case by asking Petitioner questions that conveyed judicial skepticism about his testimony, violating his due process right to a fair trial.

This proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons that follow, the Court concludes that Petitioner is not entitled to habeas relief and recommends that this action be dismissed with prejudice.

## BACKGROUND

1.  The Crime

On September 15, 2003 New York City police officers, principally Officer Jackson, observed a man identified as Mark Fam conduct a number of drug transactions. (See Transcript of Trial Proceedings ("Tr.") at 85-116.[1]) At the conclusion of each transaction, they observed Fam give money to Petitioner, who was nearby. (See id.) The sales occurred within 1000 feet of Harvey

---

[1] Petitioner's brief to the Appellate Division used different page number references than those referred to in Respondent's brief in this action. The page numbers referred to by the Court here are from the transcript provided by Respondent. The trial transcript starts at page 1 and is numbered separately from the transcripts of the hearings preceding the trial.

Milk School, located on the corner of Astor Place and Broadway, in Manhattan. (See id. at 141.)

Officers also testified that they observed Petitioner conduct a drug sale with a man on a bicycle. (See id. at 107-09.) They reported that the man put money on a brick wall where Bostic was seated, and Bostic put two "small whitish objects" on the wall. (Id. at 107-08.) Bostic took the money and the man took the objects. (See id. at 107.) Later, a man on a bicycle, fitting the description of the man observed by Officer Jackson, was arrested with a crack pipe and two plastic bags of crack cocaine. (See id. at 202-06.)

As Fam and Bostic began to walk away from the site where they were observed, the officers moved in and arrested Fam on the street. (See id. at 210.) Fam was eventually searched, and found to be in possession of crack cocaine. (See id. at 337-38.) Bostic was arrested in a deli and was found to be in possession of $733.95, including 190 one-dollar bills, 20 five-dollar bills, 18 ten-dollar bills, and 13 twenty-dollar bills, but no drugs. (See id. at 49-50.) At trial, the prosecution's argument was that Bostic was the manager of a business enterprise engaged in selling drugs, and that Fam was acting as his employee.

2. Bostic's Case

Bostic testified on his own behalf at trial and denied possessing or selling crack cocaine on the evening in question. He

3

claimed that he went gambling on the night of Sepember 15, 2003, with $180 and, by the time he left, he had between $750 and $800 in his pocket. (See id. at 274-76.) He then went with his cousin to McDonald's, and then to Washington Square Park to meet Fam. (See id. at 279.) He claimed Fam owed his cousin money. (Id.) Bostic testified that while in the park, he sat and watched as Fam and his cousin sold drugs. (See id. at 282-84.) He then left and walked to a deli to buy a beer, and was in the middle of the purchase when the police arrested him. (See id. at 286.)

Bostic testified that the gambling spot he went to had a fifty dollar minimum bet on a dice rolling game. (See id. at 275.) During cross-examination, the prosecutor posed questions about the betting and was interrupted by questions from the trial judge:

> Prosecutor: And so you said that you won about eight hundred dollars, is that correct?
>
> Bostic: Yes I believe so.
>
> Q. So when you say you won eight hundred, are you using - - that's eight hundred in addition to the hundred and eighty you already had, or all totaled you walked out of there?
>
> A. All together.
>
> Q. You walked out with eight hundred dollars all together?
>
> A. Yes.
>
> THE COURT: There were actually people betting fifty, one dollar bills?
>
> Bostic: No.

THE COURT: So where did all the one dollars [sic] bills that were supposedly in your pocket come from?

Bostic: From the gambling spot.

THE COURT: Go ahead.

Prosecutor: So I understand your testimony, that you walked out of that gambling spot where there's a fifty dollar minimum on a bet with one hundred one-dollar bills?

Bostic: Yes.

Q. That's your testimony?

A. Yes.

(Id. at 296-97.)

### 3. Summations

In their summations, both the prosecutor and defense counsel focused on the credibility of the police officers. Defense counsel pointed out to the jury that the officers had to review their reports before testifying, that the reports were prepared after Bostic was arrested, and that the officers were unable to remember anything that was not in their reports. (See id. at 343-44.) Defense counsel suggested, without saying so directly, that, as a result of the officers' need to talk to each other and the district attorney, and to consult their notes, the officers' testimony was unreliable. (Id. at 345.)

The prosecution responded by characterizing the defense's argument as having accused the police of lying. (Id. at 373-74.)

The prosecution went on to accuse the defense of having suggested that the officers were "evil people." (Id. at 374.) Defense counsel immediately objected. (Id.) The court overruled the objection. (Id.) The prosecutor continued, and countered with the argument that the police officers were good men who wanted to help people:

> Prosecutor: . . . Think of [the officers'] backgrounds. You heard that every last one of those guys had a full career before they ever became police officers, good, hardworking too. One was a teacher, one a coordinator at a bank, one a restaurant manager ---
>
> Defense Counsel: Objection to this your Honor.
>
> The Court: Overruled.
>
> Prosecutor: One a print operator and a contractor. Those are jobs with a value system. These police officers were aren't aggressive. They're not out to hurt people. They're the ones who go into the communities, into drug infested neighborhoods to try and catch the drug dealers because they want to help the people where it's miserable because the drug dealers made it miserable to live and work in that area.
>
> Defense Counsel: Objection your Honor.
>
> The Court: I think you made just about as much an argument as you can under the circumstances about the character of the officers. So I think you can point out to the record why you say they're telling the truth, but you can't talk about them, talk about whatever you say they said and make whatever argument you can following that.

(Id. at 375-76.)

Finally, the prosecutor moved on to addressing Bostic's intent to participate in the drug sales:

> Prosecutor: If you go into McDonalds and one person takes your order and another person makes your hamburger, do you have any doubt that they're both working towards the same goal of getting your hamburger? Or, to put it more in terms of this case, if you go into McDonalds and you see the manager hanging back while an employee rings up the sales, and the manager, himself actually does wait on one of the customers, do you have any doubt that they both work for McDonalds? Of course not. The defendant was the manager of this particular drug team, ladies and gentlemen.
>
> Defense Counsel: Objection. Objection, your Honor.
>
> The Court: The allegation is that there's a two person thing. I don't think in that context the manager has any sinister - - couldn't have any sinister connotation. Overruled, assuming you'll explain what you have in mind.
>
> Prosecutor: That's why he was hanging in the back watching his employee work. That's why Mark Fam had the produce on him. But it was the defendant who had all the money, like many business enterprises. The defendant had his employee do most of the work, but he took charge of the money.

(Id. at 382-83.)

During jury deliberations, the jury requested read-backs of the officers' testimony. (See id. at 426-27.) The jury then convicted Bostic of all charges. (See id. at 438-41.)

### 4. Appeal from Conviction

Petitioner's appellate counsel asserted three claims before

7

the Appellate Division, First Department: (1) the trial judge's questions deprived Petitioner of his due process right to a fair trial, (2) the prosecutor's comments deprived him of his due process right to a fair trial, and (3) Petitioner's sentence was excessive. (See Exhibit ("Ex.") A, Brief for the Appellant, annexed to Declaration of Thomas Litsky, dated July 20, 2007, ("Litsky Decl.").) The Appellate Division affirmed Petitioner's conviction, holding that defense counsel's generalized objections at trial were insufficient to preserve his objections on appeal. See Bostic, 26 A.D.3d at 291, 810 N.Y.S.2d at 71.[2] The court nonetheless stated that were it to review the merits of the claim challenging the trial judge's questions, it "would find that the court's minimal participation, consisting of only two clarifying questions, did not deprive defendant of a fair trial." (Id.) Finally, it stated that were it to review the merits of the claim challenging the prosecutor's comments, it would find that "the challenged remarks constituted fair comment on the evidence, and reasonable inferences to be drawn therefrom, made in response to defense arguments, and that the summation did not deprive the defendant of a fair trial." (Id.)

Petitioner asserted the same claims in seeking leave to appeal to the New York Court of Appeals. The Court of Appeals denied

---

[2] The Appellate Division also perceived no basis to reduce Bostic's sentence.

Petitioner's request for leave to appeal. See Bostic, 6 N.Y.3d at 892, 817 N.Y.S.2d at 627.

## DISCUSSION

Respondent concedes that the Petition is timely and Petitioner exhausted his state remedies. (See Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, at 9.) Respondent argues, however, that Bostic's claims are procedurally barred by an adequate and independent state procedural rule, and are substantively without merit. The Court will first address the purported state procedural bar and then address the merits of the remaining claim.

I.  Adequate and Independent State Procedural Grounds

Before a federal habeas court can reach the merits of a claim, the petitioner must overcome various procedural hurdles. One of those hurdles is whether review of the federal question raised in the petition is barred on the basis of an adequate and independent state ground. See Richardson v. Greene, 497 F.3d 212 (2d Cir. 2007).

If a state court judgment is based on a state procedural rule that is "independent of the federal question and adequate to support the judgment," federal courts generally cannot review the state court judgment in a habeas corpus proceeding "unless the prisoner can demonstrate cause for the default [of the state rule] and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991); <u>see also</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002); <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005); <u>Rodriguez v. Smith</u>, 485 F. Supp. 2d 368, 380 (S.D.N.Y. 2007).

A state appellate court decision holding that an issue raised on appeal was not adequately preserved at trial may potentially bar federal habeas review. <u>See</u> <u>Green</u>, 414 F.3d at 294; <u>see also</u> <u>Rodriguez</u>, 485 F. Supp. 2d at 380 (finding petitioner's prosecutorial misconduct claims to be procedurally barred). Furthermore, even if the state court has also ruled, in the alternative, on the merits of the claim raised in the federal habeas action, federal habeas review is foreclosed when the court has nonetheless expressly relied on a procedural default as an independent and adequate state ground for denying relief. <u>See</u> <u>Green</u>, 414 F.3d at 294; <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996). "Thus, even when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." <u>Green</u>, 414 F.3d at 294 (quoting <u>Glenn</u>, 98 F.3d at 724).

Here, the Appellate Division explicitly relied on an independent state procedural ground to reject Petitioner's claims – that defense counsel's objections at trial were too general to be

preserved. It also ruled, in the alternative, that Petitioner was not denied a fair trial. In light of an independent state ground potentially barring this Court's review of the federal claims presented, the Court must determine whether the state procedural bar is "adequate" to prevent federal habeas review. See Green, 414 F.3d at 294; Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Ashley v. Burge, No. 05 Civ 5597 (JGK), 2006 WL 3327589 at *5 (S.D.N.Y. 2006).

A. Adequate State Procedural Bars

The adequacy of state procedural bars to the assertion of federal questions, is itself a federal question not for the states to conclusively decide. Lee, 534 U.S. at 375, 122 S. Ct. at 885 (citing Douglas v. Alabama, 380 U.S. 415, 422, 85 S. Ct. 1074 (1965)). As a matter of federal law, "[a] claimed procedural bar is adequate only if state courts have applied the rule 'evenhandedly to all similar claims.'" Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (quoting Cotto, 331 F.3d at 239). However, "even though a rule generally might be considered firmly established and regularly followed, considered in the specific circumstances of a case it still might be inadequate to preclude federal review, if its application would be 'exorbitant,' that is to say, an arid 'ritual . . . [that] would further no perceivable state interest.'" Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007) (quoting Lee, 534 U.S. at 366).

Further, when engaging in an adequacy analysis, federal courts should give deference to state court decisions and determine if there is a "fair or substantial basis" for the application of the state law to the particular case. Garcia v. Lewis, 188 F.3d 71, 78 (2d Cir. 1999). "[T]he question is whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 386-87, 122 S. Ct. 877) (emphasis added).

In a recent case, the Second Circuit examined the guidelines a habeas court should use to determine the adequacy of a claimed state procedural bar: "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (citing Cotto, 331 F.3d at 240).

Garvey examined whether a claimed error in the admission of an identification of the defendant at trial was preserved under New

York Criminal Procedural Law § 470.05(2). 485 F.3d at 714-15. Specifically, the court in Garvey conducted an in-depth review of New York's preservation doctrine and observed: "[In New York, a] general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position . . . Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant[s] must specifically focus on the alleged error." Id. (citing People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (1995)). Garvey also noted, however, that even if there is only a general objection, when a trial court nonetheless expressly decides an issue, that also preserves the issue for appeal. See Garvey, 485 F.3d at 717; see also People v. Turriago, 90 N.Y.2d 77, 83-84, 659 N.Y.S.2d 183, __ (1997). Thus, under New York law, if a defendant specifically raises an issue at trial, or if, absent a specific objection, the trial court nonetheless decides the specific issue in response to a general objection, the issue is preserved for appeal. See N.Y. Crim. Proc. L. § 470.05(2); Gray, 86 N.Y.2d at 19; People v. Nieves 90 N.Y.2d 426, 431 n.*, 660 N.Y.S.2d 858, 861 n.* (1997) (holding issue was preserved despite general objection because the trial court specifically ruled on the issue); see also Garvey, 485 F.3d at 717; Garcia, 188 F.3d at 79 (citing the Nieves footnote).

    B.  Application to Petitioner's Claims

        1.  Petitioner's claim that the trial court aided the prosecution

Although Petitioner claims here that the trial judge aided the prosecution's case by asking Petitioner questions that conveyed judicial skepticism about his testimony, defense counsel never objected to the trial court's questions. (See Tr. at 296-97.) Furthermore, although the trial court was entitled to ask questions of Petitioner, see People v. Prado, 1 A.D.3d 533, 535, 767 N.Y.S.2d 129, 130 (2nd Dep't 2003), defense counsel was not precluded from making a specific objection to the court's questions. The requirement that a contemporaneous objection be made to preserve the issue for appeal is firmly established and regularly followed in New York. See N.Y. Crim. Proc. L. § 470.05(2); Garvey, 485 F.3d at 717. Thus, the Appellate Division's conclusion, that defense counsel's failure to object, either specifically or generally, precluded state appellate review under the state's preservation rule, and acts as an adequate and independent state procedural bar to this Court's review of Petitioner's claim in this habeas proceeding.

As discussed supra at 9-10, an adequate and independent state procedural bar will prevent a habeas court from reviewing a claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; see also Murray v. Carrier, 477 U.S.

478, 496, 106 S. Ct. 2639, 2649 (1986). Cause exists if: "(1) the factual or legal basis for a claim was not reasonably available to counsel, (2) some interference by state officials made compliance [with the procedural rule] impracticable, or (3) the procedural default is the result of ineffective assistance of counsel." Van Stuyvesant v. Conway, No. 03 Civ. 3856 (LAK), 2007 WL 2584775, at *15 (S.D.N.Y. Sept. 7, 2007) (quoting Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (internal quotation marks omitted)). "'Prejudice' requires Petitioner to demonstrate that the alleged constitutional error worked to Petitioner's 'actual and substantial disadvantage.'" Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Petitioner has not argued that there was cause for the failure to raise an objection to the trial court's questions. Because Petitioner has made no other showing of "cause," "it is not necessary to reach the question of whether he is now prejudiced by his inability to have th[is] claim[] considered for habeas relief." Daniel v. Conway, 498 F. Supp.2d 673, 679 (S.D.N.Y. 2007) (citing Murray v. Carrier, 477 U.S. 478, 494, 106 S. Ct. 2639 (1986)).

Nevertheless, where the failure to consider a claim will result in a miscarriage of justice, the Court may overlook a procedural default. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."

<u>Murray</u>, 477 U.S. at 496, 106 S. Ct. at 2649; <u>accord</u> <u>Washington v.</u> <u>James</u>, 996 F. 2d 1442, 1447 (2d Cir. 1993), <u>cert. denied</u>, 510 U.S. 1078, 114 S. Ct. 895 (1994).

"Actual innocence means factual innocence, not mere legal insufficiency." <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002) (quoting <u>Bousley v. United States</u>, 523 U.S. 614, 623, 118 S. Ct. 1604 (1998) (internal quotation marks omitted). Additionally, "to be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence . . . ." <u>Schlup v. Delo</u> 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995). The doctrine of actual innocence applies only in "extraordinary case[s]" and "credible claims of actual innocence are extremely rare." <u>Doe v. Menefee</u>, 391 F.3d 147 160-61 (2d Cir. 2004).

Because Petitioner has not presented any new reliable evidence of his innocence, he has not demonstrated that he is "actually innocent." <u>Cf.</u> <u>Lucidore v. New York State Div. of Parole</u> 209 F.3d 107, 114 (2d Cir. 2000) (even with new reliable evidence, petitioner failed to "'show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt'" (quoting <u>Schlup</u>, 513 U.S. at 327-28, 115 S. Ct. at 867)). Petitioner merely argues that the judge's questions "undermined the sense of impartiality that should surround every judicial proceeding requiring reversal" and undermined his own credibility in the eyes of the jury. (Attached pages at 4, annexed to Petition

for Writ of Habeas Corpus, filed Jan. 22, 2007).  At trial, the
judge asked two clarifying questions about the nature of the
betting at the gambling spot – questions that perhaps reflected on
Petitioner's credibility, but they were collateral to the central
facts of the case against Petitioner.  Under these circumstances,
it is not probable that the questions themselves resulted in his
conviction.  This is especially true in light of the significant
evidence of his guilt presented at trial.[3]  Therefore, Petitioner's
claim is procedurally barred from this Court's habeas review.

2.    The Improper Vouching Claim.

Petitioner argues that the prosecutor's comments during
summation, characterizing the police officers as good and
hardworking, amounted to impermissible vouching for the police
officers' character.  At trial, Petitioner's counsel made general
objections on more than one occasion to the prosecutor's arguments.
The trial court was finally prompted to say:

---

[3] Furthermore, the trial court's questions did not reach the
level of conduct required to overturn a conviction on due process
grounds.  See Francolino v. Kuhlman 365 F.3d 137, 142 (2d Cir.
2004) (noting "'A trial judge's intervention in the conduct of a
criminal trial would have to reach a significant extent and be
adverse to the defendant to a substantial degree before the risk
of either impaired functioning of the jury or lack of the
appearance of a neutral judge conducting a fair trial exceeded
constitutional limits.'") (quoting Daye v. Attorney General, 712
F.2d 1566, 1572. (2d Cir. 1983)); see also Jones v. Donnelly, 487
F. Supp. 2d 403, 410 (S.D.N.Y. 2007) (holding that a judge's
clarifying questions did not violate due process).  Here, the
trial judge's intervention was neither significant nor
substantially adverse.

> "[y]ou made just about as much an argument as
> you can under the circumstances <u>about the
> character of the officers</u>. So I think you can
> point out to the record why you say they're
> telling the truth, but <u>you can't talk about
> them</u>, talk about whatever you say they said
> and make whatever argument you can following
> that."

(Tr. at 375-76) (emphasis added).

The Appellate Division found defense counsel's objections too general to preserve them for appeal, citing to <u>People v. Tonge</u>, 93 N.Y.2d 838, 688 N.Y.S.2d 88 (1999). <u>See</u> <u>Bostic</u>, 26 A.D.3d at 291, 810 N.Y.S.2d at 71. <u>Tonge</u> cited to a line of New York Court of Appeals cases, each noting that, under New York law, general objections to do not preserve an issue for appeal. <u>See</u> <u>Tonge</u>, 93 N.Y.2d at 840, 688 N.Y.S.2d at 88. The cases cited in <u>Tonge</u> originated with, and relied upon, <u>People v. Ford</u>, 69 N.Y.2d 775, 776, 513 N.Y.S.2d 106 (1987).

In <u>Ford</u>, the New York Court of Appeals held that "defense counsel's objection to the testimony in these respects did not adequately alert the Trial Judge to defendant's present arguments so as to preserve those issues for our review." <u>Ford</u>, 69 N.Y.2d at 776. Thus, whether the trial court was adequately alerted to the specific nature of the objection is a key element to whether the objection was too general to be preserved for appeal. <u>See</u> <u>Gray</u>, 86 N.Y.2d at 19 (holding that an objection is too general if it is not "specifically directed" at the alleged error); <u>Nieves</u>, 660 N.Y.S.2d at 861 n.*, 683 N.E.2d at 767 n.*(rejecting the appellate

division's conclusion that the claim was unpreserved because, after a general objection, the trial court expressly considered the issue raised on appeal); see also Garvey, 485 F.3d at 714 (noting objections which are not sufficient to alert the trial court to the error are too generalized to preserve the issue on appeal) (citing Gray).

In the instant case, defense counsel's objections were general (see Tr. at 375-76), though they prompted the trial court to specifically respond to the prosecutor's statements: "you can't talk about [the officers' character]." (Tr. at 376.) However, the objection followed this statement from the prosecutor: ". . .it's miserable because the drug dealers made it miserable to live and work in that area." (Id.) From this, one could conclude that the objection, though general, was for prosecutorial vouching, and that the trial court's specific response was to a vouching objection. On the other hand, defense counsel could have been objecting to the reference to drug dealers making neighborhoods miserable when no evidence was introduced that the neighborhood Bostic was arrested in was miserable. Furthermore, defense counsel did not follow up with a request for any additional relief such as a curative instruction to the jury. Thus, it is not apparent from the record in what way defense counsel believed the prosecutor's statements were improper. Nor is it apparent that defense counsel was not satisfied with the court's response to the objection.

Applying the Second Circuit's factors for determining the adequacy of a state procedural bar, the Court finds that the state procedural bar is adequate to bar this Court from reviewing Petitioner's claim on the merits. First, it is not clear whether the trial court addressed the specific concerns raised by the general objection, and compliance with the state specific objection rule might very well have resulted in further action by the trial court, such as issuing an instruction to the jury tailored to defense counsel's objection. Second, as already noted, New York case law requires either a specific objection or a specific ruling. Here, though there was a ruling by the trial court, it is unclear whether it addressed defense counsel's actual objection; thus, it was not "expressly decided" so as to satisfy New York's preservation rule. See Turriago 90 N.Y.2d at 84, 659 N.Y.S.2d 183 at __; see also Garvey, 485 F.3d at 717 (citing Turriago). Third, compliance was necessary in this case precisely because it is not clear from the record what issue was being raised by the objection. A specific objection would have resolved any ambiguity and made it possible for a reviewing court to determine whether the objection was addressed.

Finally, although the trial court responded to the objection by directing the prosecutor to move on from any further discussion of the officer's character, the court did not respond to the objection by taking some corrective action like striking the

prosecutor's comments and defense counsel did not request some other response by the court. One is therefore left in doubt as to whether defense counsel was satisfied with the court's response or preserved some objection to what had occurred. Thus, this is a case where "demanding perfect compliance" would serve a legitimate governmental interest in this case - the creation of a clear record of the objectionable conduct for later review. Cf. Garvey, 485 F.3d at 717 (citing Turriago). The court concludes, as did the Appellate Division, that the claim was unpreserved, and is therefore barred by an adequate and independent state procedural rule.

Petitioner has not offered any cause for why defense counsel failed to comply with New York's preservation rule. As before, in the absence of the showing of any "cause," this Court need not address any prejudice that might have resulted. Finally, Petitioner has not come forward with any new reliable evidence showing he is innocent; nor is it probable, in light of the evidence linking him to the drug transactions, that the prosecutory's comments about the officers' character substantially contributed to the jury's verdict. Because, the state procedural bar is adequate, and Petitioner has not met his burden of showing cause, prejudice, or a miscarriage of justice, Petitioner's claim should be dismissed.

Nonetheless, the Court notes that, were it to evaluate the substance of Petitioner's claim, it would not find the claim

meritorious.  In cases of prosecutorial misconduct, the standard is whether "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, (1974)); see also United States v. Parkes, 497 F.3d 220, 233 (2d Cir. 2007) (citing United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002)).  Petitioner's burden "is a heavy one." United States v. Newton, 369 F.3d 659, 680 (2d Cir. 2004).

With regard to prosecutorial vouching, in particular, "a prosecutor is prohibited from 'express[ing] his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.'"  United States v. Carr 424 F.3d 213, 227 (2d Cir. 2005) (quoting United States v. Modica, 663 F.2d 1173, 1178 (2d Cir. 1981)).  Vouching is prohibited because it may prejudice a defendant by suggesting to a jury that evidence not introduced at trial, but known personally to the prosecutor, indicates the witness is credible.  See Newton, 369 F.3d at 681-82.  It is also impermissible for prosecutors to urge a jury to find police officers credible simply because they are police officers.  See id. at 682 n. 12.  However "the government is allowed to respond to an argument that impugns its integrity or the integrity of its case, and when the defense counsel have attacked the prosecutor's credibility or the credibility of the government

agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." Carr, 424 F.3d at 227 (quoting United States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994)).

Here, the prosecutor neither personally suggested the officers were credible, nor suggested that she had some other evidence, not offered at trial, that demonstrated that the officers were credible. Rather, the prosecutor responded to the defense's arguments suggesting the officers were not credible, and relied on facts in evidence – testimony about the officers' former jobs – to suggest that the jury consider those facts when judging the officers' credibility. That is not vouching. See, e.g., Osorio, 496 F. Supp. 2d at 301 (holding that the prosecutor's arguments with respect to a witness' credibility were a proper response to defense counsel's attacks on the witness's reliability); Campbell v. Fischer 275 F. Supp. 2d 321, 327 (E.D.N.Y. 2003) (alleged vouching by prosecution, made in direct response to defense counsel's argument on summation that a witness was lying, was fair comment on the evidence).

There was a point, however, where the prosecutor did comment on the job the officers performed by going "into drug infested neighborhoods to try and catch the drug dealers because they want to help the people where it's miserable because the drug dealers made it miserable to live and work in that area."  (Tr. at 375). In context, this came close to asking the jury to find the officers

credible because they are police officers.  Nonetheless, even if
the comments went beyond what was appropriate, they were not so
prejudicial so as to infect the trial with unfairness.  The comment
amounted to only one sentence in the prosecutor's summation.
Furthermore, the trial judge cut off any further comment about the
officers' character in response to defense counsel's objection, and
there was no follow-up by defense counsel asking for a curative
instruction.  In the context of the summation, and the trial as a
whole, there is no reason to conclude that the prosecutor's
comments resulted in a fundamentally unfair trial.

Because Petitioner's claim is procedurally barred by an
adequate and independent state ground, and, in any event, the
prosecutor's comments did not result in an unfair trial or a denial
of due process, Petitioner's vouching claim fails to provide a
basis for habeas relief.  Therefore, the Court recommends that the
claim be dismissed.

### 3.  Prejudicial statements by the prosecutor

Petitioner claims that the prosecutor's summation statements
describing him as a manager of a drug enterprise prejudiced the
jury and deprived him of due process.  The Appellate Division found
defense counsel's objection to the prosecutor's comments too
general to be preserved on appeal.  See Bostic, 26 A.D.3d at 291,
810 N.Y.S.2d at 71.  Respondent argues that the Appellate
Division's decision is an adequate and independent state ground for

denial of habeas relief.

When defense counsel objected at trial, the court overruled the objection and followed up with: "The allegation is that there's a two-person thing. I don't think in that context the manager has any sinister - - couldn't have any sinister connotation." (Tr. at 382.) Here, unlike the objection to the alleged improper vouching, the trial judge appears to have understood the specific nature of Petitioner's objection and made a direct ruling on the issue Petitioner now claims deprived him of a fair trial – that the comments about him being a manager of a drug enterprise were prejudicial. The trial court's reference to "sinister connotation" was clearly directed to whether the jury would be prejudiced by the comments. (See Tr. at 382.) Thus, unlike the vouching issue, here the objection at trial and the issue raised on appeal are the same. Because the court overruled defense counsel's objection, any further protest on that issue would have been futile.

Applying the Second Circuit's guidelines, it appears that the objection was ruled on by the trial court, and, thus, perfect compliance with the specific objection rule would not have changed the trial court's decision. Additionally, New York case law recognizes that an issue has been preserved if the trial court rules on the specific issue raised. Finally, Petitioner did substantially comply with the specific objection rule given the realities of objections during summation. Unlike during witness

testimony, summation is not typically the place for extensive argument on objections. It is not unusual for short objections to be made, without response from the other side, so as to limit interruptions that might distract or annoy the jury. In this context, perfect compliance with the specific objection rule was unnecessary.

Under these circumstances, the issue of the prosecutor's allegedly prejudicial remarks was thereby preserved for appeal under New York law. <u>See</u> <u>Garcia</u>, 188 F.3d at 78. The Court concludes, therefore, that the Appellate Division's conclusion that Petitioner's objection was unpreserved, without any reference to the objection, the court's response, or a complete statement of New York's preservation rule, is inadequate to find the claim independently procedurally barred by New York law. As such, the Court will address the merits of this claim.

III. <u>Merits Review</u>

The Appellate Division clearly rested its decision on procedural grounds. However, it also stated that "were it to reach" the merits it would deny the appeal on the merits. If a state court makes a clear and express statement of reliance on a state procedural bar, then the decision is not afforded deference under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), as an adjudication "on the merits," and a federal habeas court engages in <u>de novo</u> review. <u>Cf.</u> <u>Jimenez v. Walker</u> 458 F.3d 130, 145

(2d Cir. 2006) (holding that if a case fairly appears to rest primarily on state procedural law, it is not a decision on the merits). Even under a de novo standard of review, Petitioner's claim does not merit habeas relief.

As noted above, Petitioner bears a heavy burden when asserting a claim of prosecutorial misconduct. See Newton, 369 F.3d at 680. The prosecutor's comments must so "'infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" Parkes, 497 F.3d at 233.

Petitioner asserts that the prosecutor's comments describing Petitioner as the manager of a two-person drug operation, violated his right to a fair trial. The trial court overruled defense counsel's objection, finding that the comments were an appropriate explanation of the prosecutor's theory of the case. The Court agrees. These comments constituted a fair comment on the evidence at trial - where Petitioner was seen being handed the money from each of Fam's drug transactions - and a reasonable inference therefrom; they were therefore proper. See Osorio, 496 F. Supp. 2d at 301; see also Rodriguez v. Smith, 485 F. Supp.2d 368, 381 (S.D.N.Y. 2007) (finding that the prosecutor's statements were proper because they were based on inferences fairly drawn from the evidence presented at trial); cf. United States v. Edwards, 342 F.3d 168, 181 (2d Cir. 2003) (noting prosecutors have broad latitude in drawing inferences during summation).

Furthermore, even if improper, the comments were not so severe as to fundamentally undermine the fairness of the trial. Regardless of the label put on Petitioner's role in the activities observed by the police, there was ample evidence presented at trial that Petitioner directly participated in drug deals. As Fam sold drugs, the money was given to Petitioner. (See Tr. at 85-116.) Petitioner was also observed conducting a sale himself. (See id. at 107-09.) Therefore, any prejudice from a description of Petitioner as the manager of a drug operation arises from the evidence itself, and not the prosecutor's purported mis-characterization. Under these circumstances, Petitioner has not established a due process violation. See Butts v. Walker, No. 01 CV 5914 (JG), 2003 WL 22670921, *7 (E.D.N.Y. Nov. 6, 2003) (finding that any prejudice complained of did not arise from any inappropriate comments made by the prosecutor, but from the facts of the case). Therefore, Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that Petitioner's request for habeas relief be denied and that this action be dismissed with prejudice. Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court recommends that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v.

N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir.), cert. denied, 531 U.S. 873, 121 S. Ct. 175 (2000). The Court further recommends that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Crotty. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 145, 106 S. Ct. 466, 470 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:     December 4, 2007
           New York, New York


Copies sent to:

Thomas B. Litsky
Assistant Attorney General
of the State of New York
120 Broadway
New York, NY 10271


Derrick Bostic
04-R-3010
Attica Correctional Facility
Exchange Street
Attica, NY 14011-0149